IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| TWYLA SANDOLPH, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | CA-6:19-cv-00516-ADA-JCM (Jury) |
| MARTIN MARIETTA MATERIALS, | § | |
| INC., | § | |
| Defendant | § | |

PLAINTIFF'S MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

INTRODUCTION

On July 10, 2019 Plaintiff ("Sandolph") filed her lawsuit in state district court in McLennan County, Texas alleging sexual harassment and retaliation. The suit was removed to federal court on September 3, 2019, and on September 5, 2019 Defendant ("MMM") filed a 12(b)(6) Motion to Dismiss, claiming that Sandolph's sexual harassment claim must be reduced significantly in scope and be limited factually to only the sexual harassment she endured at the hands of Joe Hernandez, a co-worker.

Sandolph's original suit included allegations of sexual harassment by other employees of MMM, including Manuel Alaniz (Plant Manager), and Alvin Chapelle (Driver).

LITIGATION BACKGROUND

Prior to suing, Sandolph exhausted her administrative prerequisites. On August 26, 2018 she filed an Intake Questionnaire with the EEOC / Texas Workforce Commission ("TWC") pro se, and identified Hernandez, Alaniz, Chapelle, and Joseph Rodman as the "persons who did the harm." (Exhibit 1) The actual charge of discrimination, compiled by the TWC, only referred to

Page 2

Hernandez as a sexual harasser. (Exhibit 2)

MMM's 12(b)(6) Motion claimed that Sandolph's lawsuit exceeded the "scope" of the EEOC / TWC charge and sought dismissal of all factual allegations other than those related to Hernandez. In the end, MMM's argument prevailed. MMM framed its argument, on Page 8 of its Motion, as follows: "Plaintiff's Charge would not have triggered an investigation into these additional allegations [i.e. Alaniz, Chapelle, Joseph Rodman] It is not reasonable that an investigator, faced only with a claim of harassment by one specific individual that allegedly led to a suspension, would have investigated unrelated conduct by unrelated and unnamed individuals." (Exhibit 3, Page 8)

Defense counsel repeated this false statement on Page 9 of the Motion, stating: "[Sandolph] cannot now expand her claims to include people of which neither the investigator nor Martin Marietta had knowledge and conduct which neither had the opportunity to resolve."

Both statements were false when made and when filed with the court and resulted in the dismissal of a large portion of Sandolph's suit.

Discovery has shown that the statement defense made was false. The investigation MMM conducted while Sandolph's EEOC claim was still pending, revealed that Sandolph complained of sexual harassment by employees other than Hernandez, MMM was aware of those complaints and, in fact, fired one of the harassers, other than Hernandez, due to Sandolph's complaints about him.

Sandolph's counsel was unaware of the falsity of the factual statements defense made in MMM's 12(b)(6) Motion until discovery in the case was completed in January 2023 and depositions were taken in December 2022.

Page 3

The Rule and the "Scope of the Charge"

An aggrieved employee is required to exhaust her administrative remedies before suing under Title VII. Price v. Choctaw Glove & Safety Company, 459 F.3d 595, 598 (5th Cir. 2006). To effectively exhaust administrative prerequisites, a Title VII plaintiff "must file a charge of discrimination with the EEOC no more than 180 days - 300 days in a deferral state" such as Texas, "after the alleged discriminatory employment action occurred." Carter v. Target Corporation, 541 F.App'x 413, 419 (5th Cir. 2013); 42 USC Section 2000e-5(e)(1); Ikossi-Anastasiou v. Board of Supervisors of Louisiana State University, 579 F.3d 546, 549 (5th Cir. 2009).

The Fifth Circuit has also consistently ruled that "the scope of an EEOC charge should be construed liberally." Pacheco v. Mineta, 448 F.3d 783, 788 (5th Cir. 2006). This means that the scope of the charge is viewed "broadly," "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. at 789.

Pro se EEOC filers are afforded some leeway when filing charges because they rely on the EEOC or feedback from the EEOC in filing their charges. Price v. Southwestern Bell Telephone Company, 687 F2d 74, 79 (5th Cir. 1982).

Sandolph's EEOC / TCHR Filings

Sandolph filed her Intake Questionnaire on August 26, 2018. (Exhibit 1)

Sandolph filed her EEOC / TWC Charge of Discrimination on October 18, 2018. (Exhibit 2)

The Texas Workforce Commission / EEOC served Sandolph's EEOC charge of

Page 4

discrimination on MMM on October 25, 2018. (Exhibit 4)

The TWC issued a right to sue to Sandolph on May 15, 2019. (Exhibit 5)

The discovery completed in this case and which is discussed below reflects that (1) MMM investigated Sandolph's EEOC Complaint internally; (2) it investigated the sexual harassment of employees other than Hernandez; and (3) one of the harassers, Alaniz, was in fact terminated as a result of Sandolph's sexual harassment complaint filed with the EEOC.

Defense counsel was aware of the EEOC investigation and inappropriately moved for dismissal of Sandolph's sexual harassment claim on the basis that the "scope" of the charge could not have included an investigation of harassment allegations by employees other than Hernandez, when in fact, it did.

Sandolph was harmed significantly by the misrepresentation and sanctions are in order.

## DISCOVERY

Deposition of Malinda Feola

Malinda Feola was MMM's HR Manager at MMM's facilities in Waco. (Exhibit 6) She was deposed on December 9, 2022. She confirmed she was made aware Sandolph had filed an EEOC complaint against MMM. (Exhibit 6, pp. 16-17) Subsequently, an "investigation" was conducted in-house which involved the interviewing of a lot of employees, including Hernandez, Alaniz, and Sandolph, among others. ("a lot of people were pulled into the office to be interviewed.") (Exhibit 6, pp. 19-20) The investigation was conducted by several HR managers at MMM. Jay Phillips, HR Manager in the Dallas-Fort Worth MMM District, interviewed the "hourly employees." (Exhibit 6, p. 20) At the conclusion of the investigation, Plant Manager Alaniz was fired as a result of the "investigation." (Exhibit 6, pp. 15-16)

Page 5

Terry Doyle and Leo Felon, high-ranking MMM managers, interviewed the management at Sandolph's plant, including Alaniz. (Exhibit 6, p. 22)

Phillips also interviewed Feola herself "after talking to all the employees about knowledge about any sexual harassment." (Exhibit 6, p. 23) Phillips showed Feola "text messages of pictures and asked me if I've ever seen them before ..." (Exhibit 6, p. 25)

Feola assisted defense counsel in this suit to respond to Sandolph's EEOC Charge. (Exhibit 6, pp. 55-56) She also discussed Sandolph's EEOC Charge with Jill Reader, VP of HR at MMM, and Terry Doyle, the other HR Manager. (Exhibit 6, pp. 56-57)

Deposition of Manuel Alaniz

Alaniz, the Plant Manager, was fired by MMM in March 2019. (Exhibit 7, pp. 5-6, 9) He was terminated by Terry Doyle, "Head HR." (Exhibit 7, p. 16) The termination was verbal and was done by Terry Doyle in the presence of Leo Felon, General Manager. (Exhibit 7, p. 16) The reason for the termination was "Twyla ... it was on the Twyla ... the Twyla Sandolph case ..." (Exhibit 7, pp. 18-19) Notably, Doyle and Felon had asked Alaniz, straight out, "what had happened at the plant and if I had harassed her ..." (Exhibit 7, p. 19)

Alaniz witnessed Doyle read some documents while he was being interviewed which, Alaniz observed, were "accusations that Twyla had reported ..." (Exhibit 7, p. 19) He was also informed by Doyle and Felon about "some of the accusations that she [Sandolph] was leveling against employees including allegations against" himself. (Exhibit 7, p. 20)

One particular accusation which Sandolph made against Alaniz was him asking her to allow him to see her vagina. In fact, Doyle and Felon asked Alaniz that very question. ("One question that I recall was ... if I had asked that supposedly Twyla was standing at a counter and I

went up to her and said: Let me see your pink meat ...") (Exhibit 7, p. 21)

At the end of the conversation, Doyle fired Alaniz. (Exhibit 7, p. 25)

Notably, Alaniz also confirmed that Sandolph had complained to Feola "about an Obama doll" in his presence. (Exhibit 7, p. 40) Alaniz had seen the Obama doll. It was shown to him by Joe Hernandez who brought it to work. (Exhibit 7, p. 40) Sandolph complained about the Obama doll. The meeting in which she complained about the Obama doll was attended by four persons: Sandolph, Alaniz, Feola, and Hernandez. (Exhibit 7, pp. 43-44)

It is thus undeniable that the EEOC investigation MMM conducted focused on sexual harassment not only from Hernandez but also from Alaniz, the very individual whom Sandolph identified in the EEOC Questionnaire as having "harmed" her. The comment defense counsel made in the 12(b)(6) Motion to Dismiss that MMM could not have investigated any sexual harassment allegations other than those from Hernandez was false, and was intentionally made to ensure dismissal or radical dilution of Sandolph's sexual harassment claim.

Sandolph's Narrative

The timeline now makes sense. On October 25, 2018 the EEOC / TWC served Sandolph's EEOC charge on MMM and in March 2019 MMM investigated the EEOC complaint. The investigation revealed that at least one employee other than Hernandez had allegedly sexually harassed Sandolph, namely the Plant Manager, Alaniz.

This important detail was not known to Plaintiff's counsel until December 9, 2022 when both Feola and Alaniz were deposed.

That Sandolph complained to MMM about other employees sexually harassing her is also reflected in an email she sent to Jay Phillips, MMM's investigator, on February 25, 2019.

Page 7

(Exhibit 8) This narrative triggered the investigation which, as Alaniz testified, resulted in his termination.

Notably, also, Sandolph's February 25, 2019 email to Phillips reflects that she sent him "messages," Feola testified in her deposition Phillips showed her as part of the EEOC investigation.

Thus, according to Sandolph's narrative, the first employee she complained about was Alvin Chapelle. (Exhibit 8 #1) The second employee was Joe Hernandez. (Exhibit 8 #1) The third employee was Manuel Alaniz. (Exhibit 8 #2) According to Sandolph's notes, Alaniz said to her "Twyla come sit on papas lap and tell me how pink your p ***y is." " This, Sandolph continued, was not the first time he asked about my p ***y."

The complaint Sandolph made against Alaniz was confirmed by Alaniz himself in his deposition. He confirmed that the very investigation MMM undertook as a consequence of Sandolph's EEOC complaint also focused on him asking her to show him her intimate area.

In fact, however, Feola's July 9, 2018 investigation confirmed that inappropriate comments were prevalent at the plant and involved not only Hernandez. (Exhibit 9) Employees confirmed "there are a lot of inappropriate comments made at the plant, but 'everyone knows they are just playing around and he has never heard anyone say they are offended." One such employee was Brandon Chadwick. Alvin Chappell confirmed similarly that " everyone at the plant has made inappropriate comments ..." So did Richard Griffin who "confirmed there are a lot of inappropriate comments made in the driver's room but he ignores it." (Exhibit 9 #253)

In fact, Feola concluded that plant management was aware of the issues and that they "should have been immediately addressed." Management's inaction, she added, contributed to the

Page 8

"unhealthy work environment." Finally, she concluded that "none of the employees stopped any unwanted or unwelcome behavior either." (Exhibit 9 #254)

## CONCLUSION

Given the abundant evidence the discovery yielded and, more particularly, the deposition testimony of Feola and Alaniz, the conclusion is inescapable that MMM investigated Sandolph's sexual harassment allegations related to employees other than Hernandez. Hence, MMM's 12(b)(6) Motion stating, as a fact, that the EEOC investigation could not "reasonably" have been expected to include sexual harassment conduct by employees other than Hernandez was plainly wrong. In fact, it was false.

Falso also was the statement that "neither the investigator nor Martin Marietta had knowledge" of "people" and "conduct" which Sandolph did not list in the formal EEOC Charge. (Exhibit 3, Page 9)

Both statements were false and misleading. Defense counsel knew, as did MMM itself, that the actual investigation triggered by the EEOC Charge encompassed not only Hernandez but other employees as well, Alaniz, as Plant Manager, primarily.

Sandolph was severely prejudiced by defense counsel and MMM's misrepresentations. Her sexual harassment lawsuit was severely gutted.

## RULE 11 SANCTIONS

Rule 11 allows sanctions under various circumstances. It is clear that the purpose for which MMM filed the 12(b)(6) Motion was improper. It was designed to prejudice Sandolph by false pretenses. Defense counsel filed a pleading which he knew contained crucial factual inaccuracies. The court relied on those factual inaccuracies in dismissing basically half of

Page 9

Sandolph's case.

Sandolph's attorney was unaware of the falsity of the factual statements made in the Motion at the time he filed Sandolph's Response. He only became aware of them in December 2022 and after discovery closed.

Sandolph seeks two (2) types of sanctions. First, the recovery of reasonable and necessary attorney's fees her counsel incurred in both opposing the unfounded 12(b)(6) Motion to Dismiss and presenting this Motion to the court; and (2) reinstating Sandolph's state suit she filed in McLennan County and which MMM removed to federal court.

The amount of reasonable and necessary attorney's fees Sandolph is seeking is $14,512.50, and is supported by the Declaration of Peter Costea. (Exhibit 10)

Defendant's sanctionable 12(b)(6) Motion to Dismiss was signed by Attorney Mike Birrer and Attorney Maria A. Garrett.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff Twyla Sandolph respectfully moves the court to grant this Motion.

Respectfully submitted,

BY:   //ss// *peter costea*
_____
Peter Costea
TBN 04855900
4544 Post Oak Place, Suite 350
Houston, Texas 77027
Tel. 713-337-4304
Fax 713-237-0401
Email: peter@costealaw.com
ATTORNEY FOR PLAINTIFF
TWYLA SANDOLPH

CERTIFICATE OF SERVICE

I certify that on September 5, 2023 a true and correct copy of the foregoing pleading was served electronically through the court's electronic filing system on counsel for Defendant, Mr. Mike Birrer, Carrington, Coleman, Sloman & Blumenthal, LLP, 901 Main Street, Suite 5500, Dallas, Texas 75202.

//ss// *peter costea*
_____
Peter Costea